IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

NICHOLAS BANNING,

    Plaintiff,

v.

SHELBY COUNTY, SHELBY COUNTY SHERIFF DON KOONCE, ADVANCED CORRECTIONAL HEALTHCARE, INC., CWENTON WILLIAMS, TONYA ATTEBERRY, DEVON DURBIN, MEGAN WARNER, MELISSA HAYNES, BRANDON GATTON, CHRIS ZAKOWSKI, DAINE BURKHEAD,

    Defendants.

Case No.

**COMPLAINT**

Plaintiff sues Defendants and alleges:

**Introduction**

1.    On March 6, 2020, Nicholas Banning was placed in custody by Shelby County Sheriff's Deputies and booked into the Shelby County Jail.

2.    While being held at the Shelby County Jail ("the Jail") Mr. Banning was in obvious need of emergency medical care resulting from opioid dependency and withdrawal, and developed asphyxia pneumonia and other serious medical problems, requiring hospitalization for two months.

3.    Prompt and proper medical attention for the medical issue of withdrawal could have prevented Banning's severe medical problems and suffering.

4.    Correctional officers at the Jail were aware of Mr. Banning's condition and medical needs and failed to contact medical providers and otherwise provide adequate medical

1

care for Mr. Banning in violation of the law and Mr. Banning's constitutional rights.

5. During the arrest and booking process, Mr. Banning informed the arresting deputies and correctional staff that he would be going through withdrawal and that it would be severe.

6. Correctional staff noted that Mr. Banning would be going through withdrawal on jail intake records and in other reports/emails.

7. The Jail has an agreement with Advanced Correctional Healthcare, Inc. ("ACH") to provide medical services and care to individuals detained at the Jail.

8. Mr. Banning was not the first inmate to suffer severe medical problems or death in county jails that have contracted with ACH as a result of the failure to render aid to individuals suffering from drug overdose or withdrawal.

9. Defendants Shelby County Sheriff Don Koonce and ACH failed to implement any meaningful training or provide continuing education to their employees that focused on the signs, symptoms and consequences of drug intoxication and/or withdrawal of detainees being held in the Jail and the need to render prompt and adequate medical care.

10. During the days he was held at the Jail, Mr. Banning was displaying classic signs of drug withdrawal, such as severe lethargy, vomiting, and an altered mental state. In addition, Mr. Banning was clearly having trouble breathing. These medical problems were observed by the correctional officers at the Jail.

11. The Jail did not have a nurse or any other medical provider on-site at the jail and correctional officers did not request a medical professional to provide care to Mr. Banning in response to his obvious medical needs until March 10, 2021.

12. No supervising officers of the Jail or Shelby County Sheriff's Office responded to

the correctional officers' reports of Mr. Banning's deteriorating condition by providing or ordering medical care for Mr. Banning.

13. On March 10, 2020, Mr. Banning was released on his own recognizance because his condition had severely deteriorated as the result of the Defendants' failure to render medical aid and refusal to do so.

14. On March 10, 2020, the Jail transferred Mr. Banning to HSHS Good Shepherd Hospital's emergency department where medical staff noted that he was found unresponsive face down on bed in jail, and that he was hyperventilating, had diminished right lung breathing sounds, cyanotic skin, cracked and frothy lips, mottled and cool extremities and yellow bruising on his right chest wall.

15. On March 10, 2020, Mr. Banning was transferred to St. John's Hospital in Springfield because his condition was too severe to be treated adequately at HSHS Good Shepherd.

16. Mr. Banning was admitted to the CV ICU of St. John's with respiratory failure as a result of aspiration pneumonia, opioid withdrawal delirium, and a high probability of imminent or life-threatening deterioration.

17. Mr. Banning spent two months at St. John's including five weeks in the ICU, before being discharged on May 11, 2020. The bills from Mr. Banning's hospital treatment total approximately $750,000.

18. ACH, in pitching its contract for jail medical services to various counties, has stated that the company avoids major costs by having persons in custody with the worst medical emergencies released on their own recognizance or "sent somewhere else" so ACH and the county can avoid responsibility for their care and the costs associated with it.

19. This policy and/or practice by ACH and the Jail is, in part, what caused the failure to provide the most basic response to Mr. Banning's medical needs, and lead to Mr. Banning experiencing much more severe medical problems requiring a lengthy hospital stay and enormous medical expenses.

## Jurisdiction and Venue

20. This Court has jurisdiction over this matter under the following:

    a. 28 U.S.C. § 1331, as this is a civil action arising under the Constitution, laws, and/or treaties of the United States;

    b. 28 U.S.C. § 1337, as this is a civil action or proceeding arising under an Act of Congress regulating commerce and/or protecting trade and commerce against restraints and monopolies; and

    c. 28 U.S.C. § 1343, as this is a civil action seeking to redress the deprivation, under color of any State law, statute, ordinance, regulation, custom and/or usage, of a right, privilege or immunity secured by the Constitution of the United States and/or by an Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

21. Plaintiff's claims for relief are predicated, in part, upon 42 U.S.C. § 1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges, and immunities secured by the Constitution and laws of the United States, and upon 42 U.S.C. § 1988, which authorizes the award of attorneys' fees and costs to prevailing plaintiffs in actions pursuant to 42 U.S.C. § 1983.

22. Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28

U.S.C. § 1367, to consider the state law claims alleged herein.

23. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and § 1391(c), as Defendants do business in this judicial district and the events or omissions giving rise to the claims occurred in this judicial district.

**Parties**

24. Plaintiff Nicholas Banning is an adult currently residing in Christian County, Illinois, and resided in Shelby County during the time period material to this Complaint.

25. From March 6, 2020, to March 10, 2020, Mr. Banning, was a pre-trial detainee confined in Shelby County Jail in Shelbyville, Illinois, a correctional facility maintained by Defendant Shelby County Sheriff Don Koonce ("Defendant Koonce").

26. At all times material to this Complaint, Defendant Koonce was the duly-elected sheriff of Shelby County and chief administrator of the Shelby County Jail.

27. At all times material to this Complaint, he was acting under color of law and in the course and scope of his employment as the agent, servant, and official policy-maker for Defendant Shelby County on issues relating to care of prisoners in Shelby County Jail, and the policies, procedures, practices, and customs, as well as the acts and omissions, challenged by this suit, and as the County's chief law enforcement officer. He is sued in his individual and official capacity.

28. Defendant Koonce was the commanding officer of all Shelby County sheriff's deputies, correctional officers, and jail employees, and he was responsible for their training, supervision, and conduct.

29. Defendant Shelby County is joined in this action pursuant to *Carver v. Sheriff of LaSalle County*, 324 F.3d 947 (7th Cir. 2003).

30. At all times material to this Complaint, ACH was and is responsible for the hiring, retaining, training, and supervising of its employees and agents, and was and is responsible for the conduct, policies and practices implemented and followed by its employees and agents.

31. Defendant ACH is a corporation licensed and incorporated in Illinois, with its principal officers registered in Peoria, Illinois, doing business as a medical provider for various county jails, including Shelby County Jail.

32. At all times material to this Complaint, Defendants Cwenton Williams, Tonya Atteberry, Devon Durbin, Megan Warner, Melissa Haynes, Brandon Gatton, Chris Zakowski, and Daine Burkhead ("Defendant Correctional Officers") were correctional officers at the Shelby County Jail, employed by Shelby County and Defendant Koonce, who were responsible for the well-being and safety of detainees, including Mr. Banning.

## Common Allegations of Fact

33. On or about March 6, 2020, at approximately 3:00 pm, Mr. Banning was transported to the Shelby County Jail after an arrest.

34. Mr. Banning informed the arresting officers, David Myers and Justin Dudra, that he would be experiencing withdrawal and requested to have a family member obtain and bring medication for the treatment of withdrawal symptoms to the Jail.

35. Mr. Banning's family member obtained the withdrawal medication, commonly known as suboxone, and provided it to one of the arresting officers who then provided it to the Jail staff.

36. One or both of the arresting officers Myers and Dudra were present in the Jail when Mr. Banning was processed.

37. The arresting officers informed Defendant correctional officer Cwenton Williams

6

that Mr. Banning had been using and/or was in possession of heroin.

38.     Mr. Banning also informed the Jail staff during the intake process that he would be suffering withdrawal and that it would be severe.

39.     During the processing, intake records completed by one of the Defendant Correctional Officers reflect that Mr. Banning was under the influence of heroin and was exhibiting signs of drug abuse and withdrawal.

40.     Furthermore, Defendant Williams noted in a March 6, 2020, email that Mr. Banning last used heroin at 3:00 pm and will be coming down hard.

41.     During the four days Mr. Banning was in custody at the Jail, correctional officers, including Defendant correctional officers Warner, Atteberry, Durbin, and Williams, noted in emails/reports to supervisors that Mr. Banning was coming down hard from heroin and at times could not or did not take the medication for the treatment of heroin withdrawal.

42.     During the time period of the time in custody, Mr. Banning was unable to eat and drink, unable to stand or move, was vomiting, and was having trouble breathing, among other things.

43.     Various individuals in custody in the same cell as Mr. Banning attempted to help care for Mr. Banning, who was obviously in need of medical care.

44.     One of the individuals in the same cell as Mr. Banning told the Jail staff, including one or more of the Defendant Correctional Officers, that Mr. Banning needed help and without medical treatment "was going to die in here," or words to that effect.

45.     On March 9, 2020, Mr. Banning was having trouble breathing which Defendant Atteberry observed.

46.     On March 9, 2020, Defendant Atteberry noted that Mr. Banning could not get up,

7

was hyperventilating and could not speak to the public defender or attend bond court.

47. Heroin/opioid withdrawal is a serious medical condition, complications of which can be can be fatal.

48. Medical care can treat and manage the symptoms of withdrawal and prevent more serious complications from occurring.

49. There are clear and established medical protocols for monitoring and treating individuals suffering from opioid withdrawal, including the monitoring of vitals and the use of an assessment scale to determine if additional medical treatment or intervention is needed; many jails follow these widely-established protocols for the basic medical care required to be provided to individuals in custody.

50. The only professional medical care provided to Mr. Banning during the four days he was in the Jail was a doctor's approval for the buprenorphine/naloxone sublingual medication (suboxone) that Mr. Banning's family member provided.

51. On March 10, 2020, at the prosecution's request, based on communications with one or more of the Defendant Correctional Officers, a judge ordered Mr. Banning released on his own recognizance due to his dire condition.

52. On March 10, 2020, emergency medical personnel came to the Jail and found Mr. Banning unable to move and observed blood in the bed he had been lying on.

53. Mr. Banning was transported by ambulance to HSHS Good Shepherd Hospital aka Shelby Memorial Hospital ("SMH").

54. Staff at SMH noted that Mr. Banning's medical history was very "sketchy" and that he was tachypneic (experiencing excessive rapid breathing) and experiencing severe hypoxia.

55. A CTA of the chest showed large infiltrates in the right lung, acute inflammation and aspiration with atelectasis distally.

56. SMH staff determined that Mr. Banning's condition was so severe that he needed to be transferred to another hospital better equipped to handle the intensive care treatment required, and Mr. Banning was admitted to the cardiovascular ICU of St. John's Hospital ("SJH") in Springfield.

57. SJH staff documented a concern for aspiration pneumonia with a high probability of imminent or life-threatening deterioration.

58. Mr. Banning remained at SJH until May 11; during the two months he was there, he spent five weeks in the intensive care units of the hospital.

59. It was obvious to anyone, including individuals with no medical training, that Mr. Banning's serious medical needs were not being met by ACH and its personnel or the Jail and its personnel.

60. The contract between ACH and the Jail only provides for a nurse to be at the Jail four hours a week and for a doctor to be reachable by telephone.

61. The need for medical treatment and the response to such needs are left to the Jail correctional staff who have little or no medical training.

62. The medical policies of the Jail provide no guidance for correctional staff to determine when an individual requires medical treatment or how to respond to the need for medical treatment.

63. The only directives from the Jail policies regarding logging medical needs of those in custody are to provide a medical request form to the individual and to notify a supervisor or the undersheriff.

64. The Jail policy specifically states: "If they [inmates] need immediate medical attention, you [correctional staff] will need to provide this immediately."

65. The policy contains no information for staff to determine the need for immediate medical attention or how to provide medical attention.

66. Defendant Koonce was aware there was not sufficient medical staff at the Jail to address the health care needs of the individuals detained at the Jail.

67. Defendant Koonce was aware that correctional staff were untrained to recognize medical problems and respond to the need for medical attention for detained individuals.

68. Defendant Koonce knew that the policy provided to the Jail staff staff did not sufficiently provide the staff necessary information regarding the right of detainees, such as Mr. Banning, to be provided with proper medical care and protected from serious harm and/or injury.

69. As a direct and proximate result of Defendants' acts and omissions, Mr. Banning suffered severe and preventable complications from opioid withdrawal, requiring intense and prolonged hospitalization and incurring substantial medical expenses.

70. Mr. Banning has had to retain counsel and is entitled to reimbursement of a reasonable attorneys' fees, pursuant to 42 USC §1988.

## Causes of Action:

### I.    Claims under 42 U.S.C. 1983 against Defendant Koonce

71. Plaintiff re-alleges the above allegations as if fully set forth herein.

72. Plaintiff is entitled to relief against Defendant Koonce under 42 U.S.C. § 1983, based on violation of the Fourteenth Amendment to the U.S. Constitution.

73. At all times material, Plaintiff Nicholas Banning, had a constitutionally protected right under the Fourteenth Amendment to the U.S. Constitution to receive needed care while in

the Shelby County Jail, and to have his medical issues timely and properly assessed and treated.

74. Defendant Koonce deliberately disregarded the immediate and serious threat to the medical health and well-being of persons in the Shelby County Jail, including Plaintiff, and exhibited deliberate and callous indifference to serious medical needs, by failing to have policies, training and personnel equipped to provide essential medical health care, treatment and observation necessary to asses, respond to and treat serious medical needs of individuals in the custody of the Shelby County Jail.

75. Defendant Koonce was aware that there were and/or would be detainees confined in the Shelby County Jail who suffered from severe medical health needs and were at risk of injury and/or death. Despite this knowledge, Defendant Koonce intentionally and knowingly failed to provide medical care, equipment, personnel and training necessary to respond to individuals and prevent their injury or death.

76. Defendant Koonce deliberately disregarded the immediate and serious threat to detainees' medical health and well-being and exhibited deliberate indifference to their serious medical and psychological needs by denying and unreasonably delaying access to competent medical care to treat their serious medical needs, in that Defendant Koonce's actions in failing to provide close observation and adequate medical care by trained medical professionals was so grossly substandard, incompetent, and inadequate as to amount to no medical and mental health care at all.

77. Defendant Koonce contracted with ACH even though the contract did not provide for adequate medical attention for detainees and with the knowledge that ACH's stated objective was to save money by not providing medical care to detainees, and to discharge them from jail when their needs became severe or life-threatening.

78. In light of the aforementioned, Plaintiff suffered from both an objectively and subjectively substantial risk of serious harm while under the care and custody of Defendant Koonce. Defendant Koonce responded to this risk in an objectively and subjectively unreasonable manner.

79. As a result of Defendant Koonce's disregard of and indifference to Plaintiff's constitutionally protected right to be provided with proper care, Plaintiff's medical needs were ignored.

80. As a direct and proximate result of Defendant Koonce's deliberate indifference to Plaintiff's serious health needs, Plaintiff suffered severe medical complications, injuries, suffering and medical expenses.

WHEREFORE, Plaintiff prays for judgment as stated in the Prayer for Relief.

**II.     Claims under 42 U.S.C. 1983:**
**Defendants Cwenton Williams, Tonya Atteberry, Devon Durbin, Megan Warner, Melissa Haynes, Brandon Gatton, Chris Zakowski, and Daine Burkhead**
**(Defendant Correctional Officers)**

81. Plaintiff re-alleges the above allegations as if fully set forth herein.

82. Plaintiff is entitled to relief against Defendant Correctional Officers under 42 U.S.C. § 1983, based on violation of the Fourteenth Amendment to the U.S. Constitution.

83. At all times material, Plaintiff had a constitutionally protected right under the Fourteenth Amendment to the U.S. Constitution to receive necessary care while in the Shelby County Jail, and to have his serious medical needs timely and properly assessed and treated.

84. Defendant Correctional Officers deliberately disregarded the immediate and serious threat to the well-being of persons, including Plaintiff, in the Shelby County Jail in need of medical treatment and exhibited deliberate and callous indifference to serious medical and mental health needs, by denying access to immediate and structured medical observation,

assessment, and treatment necessary to treat serious medical needs and prevent suffering and death.

85. Defendant Correctional Officers were aware of the fact that there were detainees, including Plaintiff, at the Jail who suffered from severe medical needs and were at risk of injury and/or death. Despite this knowledge, Defendant Correctional Officers intentionally and knowingly failed to provide serious, ongoing case management and treatment for Plaintiff and failed to regularly monitor his medical health care needs.

86. Defendant Correctional Officers knew at all times material to this action that there was a substantial risk that detainees with serious medical issues, including Plaintiff, left substantially untreated, could be seriously injured and/or die, that such injuries and/or deaths were reasonably foreseeable, and that the risk of injuries and/or death was imminent and immediate.

87. Defendant Correctional Officers deliberately disregarded the immediate and serious threat to detainees', including Plaintiff's, medical health and well-being, and exhibited deliberate indifference and callous indifference to their serious medical and psychological needs by denying and unreasonably delaying access to competent health care to treat their serious medical issues.

88. In light of the aforementioned, Plaintiff suffered from both an objectively and subjectively substantial risk of serious harm while under the care and custody of Defendant Correctional Officers.

89. Defendant Correctional Officers responded to this risk in an objectively and subjectively unreasonable manner.

90. As a result of Defendant Correctional Officers' disregard of and indifference to

Plaintiff's constitutionally protected right to be provided with proper care, Plaintiff's medical needs were ignored.

91. As a direct and proximate result of Defendant Correctional Officers' deliberate indifference to Plaintiff's serious health needs, Plaintiff suffered severe medical complications, injuries, suffering and medical expenses.

WHEREFORE, Plaintiff prays for judgment as stated in the Prayer for Relief.

### III. Claims under 42 U.S.C. 1983:
*Monell* Claim: Defendants Koonce and ACH

92. The violations of Plaintiff's constitutional rights under the Fourteenth Amendment to the United States Constitution, his damages and the conduct of the individual Defendants, were directly and proximately caused by the actions and/or inactions of ACH and Defendant Koonce, in his official capacity as the final policy-maker as Sheriff of Shelby County, who have, with deliberate indifference:

   a. failed to establish and/or implement policies, practices and procedures to ensure that detainees at the Shelby County Jail receive prompt and appropriate medical care for serious medical needs, including specifically providing monitoring and care by medically-trained personnel for individuals experiencing drug withdrawal or intoxication/overdose;

   b. failed to adequately assess and provide adequate care and treatment for detainees exhibiting signs of distress;

   c. failed to adequately monitor the deteriorating mental and medical health conditions of detainees;

   d. failed to ensure through training, supervision and discipline that correctional, supervisory and medical staff at or assigned to the Shelby County Jail, in necessary

circumstances, make a prompt referral for health care services outside the Jail;

e. failed to ensure through training, supervision and discipline that correctional and medical staff adequately communicate and document inmates' deteriorating mental and medical health conditions;

f. failed to ensure through training, supervision and discipline that correctional and medical staff properly respond to inmates' deteriorating and medial health conditions;

g. possessed knowledge of deficiencies in the policies, practices, customs and procedures concerning detainees, and approved and/or deliberately turned a blind eye to these deficiencies.

WHEREFORE, Plaintiff prays for judgment as stated in the Prayer for Relief.

**Damages**

93. Plaintiff has sustained the following damages:

   a. pain and suffering, both physical and emotional;

   b. pre- and post-judgment interest; and

   c. significant medical expenses.

Accordingly, Plaintiff respectfully requests that the Court award Plaintiff the aforementioned damages; any and all other compensatory damages suffered by Plaintiff; punitive damages; attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and such other and further relief as the Court deems just and equitable.

**Prayer for Relief**

WHEREFORE, the Plaintiffs seek judgment as follows:

   a. Compensatory damages against each of the Defendants herein;

   b. Punitive damages against Defendants sued individually;

c. Attorneys' fees pursuant to 42 U.S.C. § 1988 and costs of litigation;

d. Such further relief as the Court deems just and proper.

## Jury Trial Demand

94. Plaintiff demands trial by jury.

        Respectfully Submitted,

        *s/Louis J. Meyer*

        Louis J. Meyer
        MEYER & KISS, LLC
        311 West Stratford Drive
        Peoria, Illinois 61614
        t. 309.713.3751
        f. 312.765.0104
        e. louismeyer@meyerkiss.com

        *s/Amanda S. Yarusso*

        111 W. Washington St, #1500
        Chicago, Illinois 60602
        773-510-6198
        amanda.yarusso@gmail.com